IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-226-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    JEROME BRAVO

      Defendant.

---

## PLEA AGREEMENT

---

      The United States of America (the government), by and through Brian Dunn, Assistant United States Attorney for the District of Colorado, and the defendant, Jerome Bravo, personally and by counsel, David Lindsey and Nancy Kardon, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.    AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant agrees to

(1)    plead guilty to 10 violations of 18 USC §§ 2113(d) and 2, Bank Robbery and Aiding and Abetting the Same (Counts 2, 5, 7, 9, 11, 13, 15, 17, 19 and 21 of the Superseding Indictment) and 3 violations of 18 USC § 924(c)(1)(A)(ii), Brandishing a Firearm During and in Relation to a Crime of Violence (Counts 3, 6, and 8 of the Superseding Indictment);

(2)    waive certain appellate and collateral attack rights, as explained in detail below;

COURT EXHIBIT

1

(3)  be liable for restitution of $127,738.00, jointly and severally, to the following banks in the following amounts

- $30,536 to Keybank, 1502 E. Arizona Place, Aurora, CO
- $7,605 to BBVA Compass, 800 N Broadway, Denver, CO
- $210 to Keybank, 12101 E. Dartmouth Ave., Aurora, CO
- $6,346 to Keybank, 16796 E. Smoky Hill Road, Centennial, CO
- $14,949 to BBVA Compass, 8101 E. Belleview Ave. Denver, CO
- $17,992 to FirstBank, 1316 E Evans Ave., Denver, CO
- $10,973 to Keybank, 6405 E Hampden Ave, Denver, CO
- $15,412 to FirstBank, 8901 E. Hampden Ave, Denver, CO
- $6,022 to Keybank, 3410 E. 1st Ave., Denver, CO
- $17,693 to BBVA Compass, 8008 N. Yarrow St., Arvada, CO

(4)  agree not to contest forfeiture as more fully described below.

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(C) and the parties agree that a sentencing range of 300-360 months is the appropriate disposition in this case. The parties understand that, once the Court accepts the plea agreement, the Court is required to enter the above-described sentence. The parties further understand that, if the Court informs the parties that it intends to impose a sentence different from the above-described sentence, either party has the right to withdraw from the plea agreement.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b). The Government also agrees to dismiss Counts 1, 10, 12, 14, 16, 18, 20, 22 and 23 of the Superseding Indictment with respect

to the defendant at sentencing. The Government further agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado.

### C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless the government appeals the sentence imposed.  If the government appeals the sentence, then the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

     (1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

     (2)    the defendant was deprived of the effective assistance of counsel; or

     (3)    the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by

the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**Forfeiture of assets**:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 924(d), Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to:

A. Glock 17 9mm handgun, bearing serial number, seized from the defendant's car on April 12, 2021;

B. .380 caliber Smith & Wesson Bodyguard handgun, bearing serial number

EAP19AG seized by authorities from the defendant's residence on or about April

12, 2021;

C. any and all ammunition associated with the firearms referenced above;

D. A money judgment in the amount of the proceeds obtained by the defendant,

which will be credited with any net proceeds obtained from judicially forfeited assets.

The defendant agrees and consents to the forfeiture of these assets pursuant to

any federal criminal, civil, and/or administrative forfeiture action.   The defendant

understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send

notice in non-judicial civil forfeiture matters.  Having been advised of said rights

regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights

to notice being sent within the time frames in 18 U.S.C. § 983 and to having the

property returned to him/her if notice is not sent within the prescribed time frames.  The

defendant further agrees to the forfeiture of any substitute assets up to the value of any

property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal

Procedure 32.2(e).

The United States Attorney's Office for the District of Colorado will recommend to

the Attorney General that any net proceeds derived from judicially forfeited assets be

remitted or restored to eligible victims of the offense, for which the defendant has

pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and other applicable

laws, if the legal requirements for recommendation are met.  The defendant

understands that the United States Attorney's Office only has authority to recommend

such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the below-described property, which was seized from the defendant for evidentiary purposes, and which is currently in the custody or control of the FBI, was lawfully seized and that it is evidence, contraband, or fruits of the crimes to which the defendant is pleading guilty. The defendant, as sole and rightful owner, relinquishes and abandons all claims, title, and interest the defendant has in such property with the understanding and consent that the FBI  may dispose of the property without further obligations. The specific property includes: a 9mm semi-automatic handgun with no serial number and ammunition seized by law enforcement on July 27, 2021

## II.   ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of counts of convictions are as follows:

### Counts 2, 5, 7, 9, 11, 13, 15, 17, 19 and 21

### 18 U.S.C. § 2113(d), Bank Robbery

*First*:     The defendant intentionally took from the person or the presence of the person, money;

*Second*:  The money belonged to or was in the possession of a federally insured bank at the time of the taking;

*Third*:    The defendant took the money by means of force and violence or intimidation; and

*Fourth*:       The defendant assaulted some person or put some person's life in jeopardy by the use of a dangerous weapon or device, while engaged in taking the money.

See 10th Cir. Jury Instr. 2.77

## Counts 3, 6 and 8: 18 USC § 924(c)(1)(A)(ii)

*First*:        The defendant,

*Second*:       Knowingly use and brandished a firearm during and in relation to a crime of violence, for which the defendant may be prosecuted in a court of the United States, to wit: Bank Robbery.

10th Cir. Pattern Jury Instr. 2.45.1

## III.   STATUTORY MAXIMUM SENTENCE

The maximum penalties for a violation of 18 U.S.C. § 2113(d) (Counts 2, 5, 7, 9, 11, 13, 15, 17, 19 and 21 of the Superseding Indictment) are: not more than 25 years' imprisonment; maximum term of supervised release 3 years; maximum fine $250,000; $100 mandatory victim's fund assessment fee; restitution.

The maximum penalties for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 3, 6, and 8 of the Superseding Indictment) are: not less than 7 years' imprisonment and not more than life imprisonment, to be imposed consecutively to any other sentence; maximum term of supervised release 5 years; maximum fine of $250,000; $100 mandatory victim's fund assessment fee; restitution.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

### January 6, 2021 Keybank Robbery (Counts 2 and 3)

On January 6, 2021, the defendant and codefendant robbed the KeyBank at 10502 East Arizona Place, Denver, CO, an FDIC-insured institution. The two men were masked and wearing hoodies and ran into the bank yelling, "Whoa whoa." The defendant pointed a black handgun at a teller and stated, "Don't move, I'm going to shoot you." After taking currency from the drawer, he jumped back over the counter and left the bank.  The codefendant approached another teller window holding a gun and pointed it at the teller. In fear for his life and safety, the teller set the money down on the counter and slid it toward the man and backed away. Both the defendant and his codefendant then ran from the bank. The two defendants stole $30,536.  The defendant used a functional semi-automatic handgun to complete this robbery.

From camera footage, investigators determined that the defendant and his codefendant arrived and fled in a black Nissan Xterra SUV. The Xterra was located shortly after the robbery, abandoned a short distance away. It was an active steal out of Denver from January 5, 2021, at an undetermined time. Currency from the bank was recovered inside the vehicle along with a cigarette butt. DNA extracted from that cigarette matches the known DNA profile of the defendant.

### February 4, 2021 BBVA Robbery (Counts 5 and 6)

On February 4, 2021, at approximately 2:36 PM, the defendant and his codefendant robbed the BBVA Compass Bank at 800 North Broadway, CO, an FDIC-insured financial institution. The defendant and codefendant ran into the bank yelling and screaming. The defendant and his codefendant pointed handguns at everyone in the bank. The defendant demanded the teller open her drawer as he vaulted over the counter. Out of fear, the teller complied and removed money from her drawer and gave it to the defendant and his codefendant, who placed it into a black and red bag. Shortly thereafter, the defendant and his codefendant left the bank. The defendant was armed with a functional semi-automatic handgun to complete this robbery. The two defendants stole $7,605.96.

Surveillance camera footage showed the defendant and codefendant arrived and fled in a pre-2007 stolen Toyota Highlander.

### February 8, 2021 First Keybank Robbery (Counts 7 and 8)

On February 8, 2021, at approximately 4:10PM, the defendant and codefendant robbed the KeyBank at 12101 East Dartmouth Avenue, an FDIC-insured financial institution. The defendant and codefendant entered that bank,

screaming and waving handguns. The defendant and codefendant approached the
teller counter, pointing guns at the teller, and told her to open her drawer.  The teller
collapsed onto the floor beneath her station. The defendant and codefendant
demanded she give them cash; however, this branch used a cash recycler machine
that is only accessible via passcode. When the robbers could not obtain cash, one
told the other "This one is a no go."  The defendant took some rolled coins from a
drawer before running out of the branch. The two defendants stole $210. The
defendant was armed with a functional semi-automatic handgun to complete this
robbery. Surveillance camera footage showed the defendant and codefendant
arrived and fled in a pre-2007 stolen Toyota Highlander.

### February 8, 2021 Second Keybank Robbery (Count 9)

On February 8, 2021, about 50 minutes after the Dartmouth location robbery,
the defendant and his associate robbed the KeyBank at 16796 East Smoky Hill
Road, an FDIC-insured financial institution. The victim teller was at her teller station,
processing a cash deposit, when the defendant and codefendant ran into the bank
brandishing handguns. The defendant and codefendant heard the teller's cash
counting machine in operation and ran straight to her. The defendant and
codefendant vaulted the counter and demanded money from the drawers and from
her machine. The teller was in fear for her life and safety and gave the robbers the
money in her drawers and from the machine. After obtaining the money, the
defendant and codefendant vaulted the counters and ran out of the bank. The two
defendants stole $6,346. Surveillance camera footage showed the defendant and
codefendant arrived and fled in a pre-2007 stolen Toyota Highlander.

### February 9, 2021 BBVA Compass Robbery (Count 11)

On February 9, 2021, at approximately 3:36PM, the defendant and codefendant robbed the BBVA Compass Bank at 8101 East Belleview Avenue, Denver, CO, an FDIC-insured financial institution. The defendant and codefendant entered the bank brandishing handguns and demanding money. The teller complied, in extreme fear for her life and safety. The defendant and codefendant then fled in the same stolen gray Toyota Highlander used in previous robberies. The two defendants stole $14,949.  That stolen Highlander was discovered abandoned a block from the defendant's residence.

### February 18, 2021 FirstBank Robbery (Count 13)

On February 18, 2021, at approximately 3:25PM, the defendant and codefendant robbed the FirstBank at 1316 East Evans Avenue, Denver, CO, an FDIC-insured financial institution. The defendant and codefendant entered the branch brandishing handguns, yelling "get down" and warned that they weren't "playing."  The defendant and codefendant also threatened to shoot the occupants of the bank.  The defendant vaulted over the counter and emptied out several teller drawers, actually physically taking the drawer units while the codefendant corralled the bank's occupants from where they were standing to the office area of the main lobby.  At one point a victim customer walked in, and the codefendant threatened the customer at gunpoint, ordering ordered him to move to another portion of the bank. After the defendant obtained the cash drawers, both the defendant and codefendant fled out the front doors and got into a black stolen Nissan Juke.  The defendant used

a functional semi-automatic handgun with an extended magazine and a red trigger to complete this robbery.  The two defendants stole $17,992.

### March 1, 2021 Keybank Robbery (Count 15)

On March 1, 2021, the KeyBank at 6405 East Hampden Avenue, Denver, CO, an FDCI-insured financial institution, was robbed. The defendant and codefendant entered the branch, brandishing handguns.  The defendant jumped the teller line and stole the contents of several drawers while the codefendant held the bank's occupants at gun point.  The robbers then fled out of the bank, and got into the stolen black Nissan Juke with no license plates and fled.  The defendants stole $10,973.

### March 17, 2021 FirstBank Robbery (Count 17)

On March 17, 2021, at approximately 2:27PM, the FirstBank at 8901 East Hampden Avenue, Denver, CO was robbed. The defendant and codefendant entered the branch, brandishing handguns.  The defendant jumped the teller line and stole the contents of several drawers while the codefendanrt held the bank's occupants at gun point.  All occupants were in fear for their lives and safety.  The defendant obtained several teller drawers that he handed off to the codefendant before he jumped back over the counter.  The defendant and codefendant then fled out of the bank, and got into a recently stolen silver Isuzu Trooper.  The vehicle then fled the area. The codefendants stole $15,412.

### March 31, 2021 Keybank Robbery (Count 19)

On March 31, 2021, the defendant, codefendant, and an unindicted third person robbed the KeyBank at 3410 East 1st Avenue, Denver, CO, an FDIC-insured

financial institution. The defendant, codefendant, and an unindicted third person entered the branch brandishing handguns. The defendant and an unindicted third person vaulted the counter and ordered both tellers to the ground at gunpoint. Each employee complied while in extreme fear for their lives and safety. The codefendant pointed a gun at the other occupants of the lobby. Once the defendant and unindicted person removed the money from several of the teller drawers, they hopped back over the counters. The defendant, codefendant, and an unindicted third person stole $6,022, ran out the front door of the bank and fled in a recently stolen black 2006 Chevy Impala Maxx wagon.

### March 31, 2021 BBVA Compass Robbery

On March 31, 2021, the defendant, codefendant, and an unindicted third person robbed the BBVA Compass Bank at 8008 North Yarrow Street, Arvada, CO, an FDIC-insured financial institution. The defendant, codefendant, and an unindicted third person entered the bank brandishing handguns. The defendant and an unindicted third person vaulted the counter and put the teller at gunpoint, ordering her to the floor. The codefendant held two other employees at gunpoint. The defendant and an unindicted third person completed stealing money from the teller drawer, and hopped the counter again. All three fled out the front doors of the bank and got into the same black Chevy Impala Maxx wagon as used in the earlier Keybank robbery. The robbers stole $17,693.50.

On April 1, 2021, Denver Police officers located the black Chevy Maxx wagon parked unoccupied along the east side of the apartment where the defendant resides. Police found paper money straps from BBVA Compass robbery. Police later

searched the defendant's residence and found the handgun with a red trigger and

Halloween face mask.

All of the activity listed above took place in the State and District of Colorado.

## VI.    ADVISORY GUIDELINE CALCULATION

### Bank Robbery Counts Guideline Range

a)      Under Section 2B3.1(a), the base offense level is **20**.

b)      Add **2** levels because property of a financial institution was taken for each count. § 2B3.1(b)(1).

c)      Add **5** points because a firearm was brandished or possessed in the robberies charged in Counts 9, 11, 13, 15, 17, 19, and 21[1]. § 2B3.1(b)(2)(C).

d)      Add **4** levels because the victims in Count 13 were abducted and move to another part of the bank. § 2B3.1(b)(4)(A).

e)      Grouping - Add **5** additional levels (§ 3D1.4) because 5 units would be added for 5 other robberies equally serious or 1-4 points less for a total of 6 Units. (§ 3D1.4)[2]

f)      The adjusted offense level is **36**.

g)      The career offender adjustment applies based on the defendant's prior two state felony convictions for Robbery. Thus, under § 4B1.1(b)(2), the defendant's criminal history is VI, and the offense level is **36**.

h)      After acceptance of responsibility, the resulting total offense level is **33**.

i)      The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category VI due to his career offender status pursuant to § 4B.1.1.

---

[1] The additional enhancement for brandishing a firearm does not apply to counts 2, 5, and 7 because those counts have accompanying convictions under 18 USC 924(c)(1)(A)(ii) that account for the conduct.
[2] Counts 2, 5 and 7 have an estimated offense level of 22. Counts 9, 11, 15, 17, 19 and 21 have an estimated offense level of 27. Count 13 has an estimated offense level of 31. Thus Count 13 is the controlling guideline.

j)   The Guideline range for a total offense level of 33 and a criminal history category if VI is 235-293 months.

**Counts 3, 6 and 8 Guideline Range**

k)   Pursuant to § 2K2.4(b). the guideline sentence is the minimum term of imprisonment required by statute, to run consecutive to any other sentence.  Counts 3, 6 and 8 charge the defendant with violating 18 U.S.C. § 924(c)(1)(A)(ii).  The mandatory minimum term of imprisonment for each charge under § 924(c)(1)(A)(ii) is seven years, *i.e.*, 84 months imprisonment.  Thus, the guideline sentence is 84 months for each count, for a total of 252 months as to Counts 3,6 and 8, to be imposed consecutively to each sentence imposed for Counts 2, 5, 7, 9, 11, 13, 15, 17, 19 and 21.

l)   § 4B1.2(c) requires that, when a defendant is a career offender and convicted of multiple counts that include a violation of § 924(c), the guideline shall be the greater of (a) the guideline range by adding the mandatory minimum consecutive penalty to the otherwise applicable guideline range or (b) the guideline range under § 4B1.2(c)(3).  Here, the guideline range using (a) is 487-545 months, as opposed to 262-327 for (b).  Thus, (a) is the controlling guideline.

**Total Guideline Range**

m)   As explained above, the defendant's guideline range is **487-545** months.

n)   Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $50,000 to $500,000, plus applicable interest and penalties.

o)   Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term at least 2 years, but not more than 5 years.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 11-22-22

Jerome Bravo
Defendant

Date: 11/22/22

David Lindsey
Attorney for Defendant

Date: 11/22/22

Nancy Kardon
Attorney for Defendant

Date: 11/22/22

Brian Dunn
Assistant U.S. Attorney