IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00226-DDD-1

UNITED STATES OF AMERICA,

       Plaintiff,

v.

**1.    JEROME BRAVO**,

       Defendant.

---

**DEFENDANT JEROME BRAVO'S SENTENCING POSITION**
_____

Defendant Jerome Bravo, by and through his attorneys-of-record, Nancy Kardon and David Lindsey, respectfully files the following Sentencing Position. In support thereof, Mr. Bravo states as follows:

I.

**INTRODUCTION**

A. <u>Mr. Bravo's Personal History And Characteristics</u>

Mr. Bravo is a 39-year-old man, who was abandoned by his crack-addict, physically-abusive father when he was two years old. He had a Honduran mother, who was abandoned by her family for being involved with a black man (Mr. Bravo's father). Mr. Bravo's mother worked various jobs and was still unable to adequately support herself and Mr. Bravo, requiring them to move homes and change schools frequently. At age 10, Mr. Bravo inadvertently learned that a neighbor down the street was his father, who proceeded to teach Mr. Bravo how to cook crack cocaine and sell it. This

became Mr. Bravo's way of supporting his mother and himself.  When Mr. Bravo was 22 years old, his close drug-dealer friend was murdered.  To cope with his loss, Mr. Bravo turned to the only thing that was consistently there for him, drugs.  Shortly thereafter, Mr. Bravo was diagnosed with depression.  He turned to using cocaine every few days, up until the time of his arrest in this case.

The best indicator as to who Mr. Bravo truly is as a man, is his continuing friendships with his ex-wives and the mothers of his four children, as referenced in PSR ¶¶ 189-193), as well as his relationships with his children and grandchildren, outlined in the letters submitted as attachments to the PSR.  Mr. Bravo was a stay-at-home father for his three children with Tamika Crews, while she attended school to become a medical assistant, and he considers her to be his best friend.  He also has a very close relationship with their children, ages 16, 19 and 21, who have given him the five grandchildren.  Further, he has a close relationship with his child with Diana Jones, and is the de facto father of Ms. Jones' seven-year-old son, whose father passed away. (See Jones' letter attached to the PSR).

Mr. Bravo is currently in a committed relationship with Tashinya Verdine, who is a contract employee for Federal Protective Services, and they plan to get married.  Ms. Verdine has three children from a prior relationship.  Ms. Verdine plans to wait for Mr. Bravo while he is incarcerated.

B. <u>Mr. Bravo's Offense Conduct</u>

In 2018, Mr. Bravo's mother died while he was in custody on a prior case. He was not permitted to see his mother or attend her funeral. He was never given an opportunity to mourn her death, nor was he given therapy to learn how to deal with her loss. He had no father or sibling to share his grief. When he was released from custody, he completed his parole successfully, but then encountered financial problems, a separation from his girlfriend due to the stress from financial hardship, and relapsed into the drug use that led to the offenses in this case. Mr. Bravo is extremely remorseful for the harm he know that he caused the victims in this case. He knows that he must be punished for that. He suffers for what he did every day.

C. <u>Mr. Bravo's Post-Offense Rehabilitation</u>

Instead of merely feeling remorse for what he has done, Mr. Bravo has turned his remorse into action. Specifically, while in custody in this case at the GEO facility in Aurora, Mr. Bravo witnessed an inmate being stabbed by another inmate. Mr. Bravo was able to intervene and stop the assault. While at the Fremont County Jail in Canon City, the facility's phones were not operational and several inmates were angry and wanted to start rioting. Mr. Bravo met with those inmates and convinced them not to riot, but instead, to go on a hunger strike.

Since arriving at his final place of incarceration in this case, FDC Englewood, Mr. Bravo has taken under his wing a young inmate, who is 22 years old. Coincidentally that young inmate is another client of undersigned counsel. Mr. Bravo has provided

3

advice to that inmate on getting out of gangs and making positive changes in his life. Mr. Bravo converted to Islam while in custody in this case, and currently prays several times a day, inviting the young inmate to pray with him, which he does.

II.

**GUILTY PLEA AND APPLICATION OF ADVISORY SENTENCING GUIDELINES**

A. <u>Guilty Plea</u>

Mr. Bravo pled guilty in this case to committing 10 bank robberies, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2113(2) and (2), and three counts of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

B. <u>Plea Agreement</u>

In the plea agreement, entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (parties agree that a specific sentence or sentencing range is the appropriate disposition of the case), the parties agreed that a sentence of 300 to 360 months (25 to 30 years) is sufficient but not greater than necessary to accomplish the goals of sentencing, pursuant to 18 U.S.C. § 3553(a).

C. <u>Presentence Report</u>

The Probation Office indicates in its Sentencing Recommendation that it believes a sentence of 324 months (27 years) for Mr. Bravo, who has not served more than five years in custody, and will be well over 60 years old at the time of his release from

custody, is an appropriate sentence in this case, providing appropriate punishment and deterrence from future criminal conduct.

III.

**BASED ON THE PLEA AGREEMENT ENTERED PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 11(C)(1)(C), AS WELL AS THE MANDATES OF 18 U.S.C. § 3553(A), THIS COURT SHOULD SENTENCE MR. BRAVO TO 300 MONTHS (25 YEARS) IN CUSTODY**

For all of the reasons set forth herein, and in accordance with the plea agreement entered into by the parties pursuant to Rule 11(c)(1)(C), the defense requests that this Court sentence Mr. Bravo for the man he is today, as detailed above, and grant him a downward variance from the Court's ultimately-calculated guideline range to a sentence of 300 months (25 years), followed by the PSR-recommended three years of supervised release.

Specifically, following United States v. Booker, 125 S.Ct. 738 (2005), the Court must impose a sentence in accordance with Section 3553(a), and should not presume that a sentence calculated pursuant to the Sentencing Guidelines is appropriate. The guidelines range is only one factor for the Court to consider in imposing a sentence. The Court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment set forth in Title 18 U.S.C. § 3553(a)(2). See United States v. Foreman, 436 F.3d 638, 644 n. 1 (6th Cir. 2006) ("the district court's job is not to impose a 'reasonable' sentence [but] to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)"); United States v. Tucker, 473 F.3d 556, 561 (4th Cir. 2007) (same); United States v. Willis, 479

F.Supp.2d 927, 929 (E.D. Wis. 2007).  The court in Willis explained that "the so-called parsimony provision…directs the court to impose the minimum term necessary to comply with the statutory goals of sentencing." 479 F.Supp.2d 927, 929 (emphasis added).

The goals of sentencing include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A), (B) and (C).  And most importantly here, in determining the particular sentence to be imposed, the court must sentence the individual who stands before the Court at sentencing, for the man he currently is.  See Pepper v. United States, 131 S.Ct. 1229 (2011).

Mr. Bravo is 39 years old, and this means he will be 64 years old when released from prison if the requested sentence of 25 years is imposed.  The Sentencing Commission has repeatedly found that age on release is a strong predictor of recidivism.  Offenders in their 50s at the time of release are about 300% less likely to be reconvicted than offenders in their 20s at the time of release.  See U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* at 23 (2017).  From a recidivism standpoint, therefore, there is no need to impose a sentence any longer than 25 years.

Mr. Bravo is not the same man who committed the offenses of conviction in this case.  As set forth above, he has become a practicing Muslim, and he has acted as a peacemaker while in custody, counseling other inmates to make better choices for themselves, and, he has served as a mentor for a young inmate, who desperately needs the father figure that Mr. Bravo never had.  He has taken his poor lot in life, and bad life choices, and turned them into a learning not only for himself, but also for others who might follow in his ill-chosen path.

Taking into account the seriousness of the offenses and the need for both general and individual deterrence and protection of the public, as well as Mr. Bravo's complete acceptance of responsibility and positive conduct in pre-trial custody, all as set forth above, the defense asks that this Court sentence Mr. Bravo to 300 months (25 years) in custody, to be followed by three years of supervised release, as a sentence that is sufficient, but no greater than necessary, to accomplish the goals of sentencing.

IV.
**CONCLUSION**

For all of the reasons set forth above, the defense requests that this Court impose a sentence for Mr. Bravo of 300 months (25 years) in custody, followed by three years of supervised release, as a sentence that is sufficient, but no greater than

necessary, to accomplish the goals of sentencing.

Dated this 9th day of February, 2023.

                                              Respectfully submitted,

s/ *Nancy Kardon*
NANCY KARDON

Nancy Kardon, Esq. (Bar #47074)
Kardon Law, Inc.
4770 Baseline Rd
Suite 200, Boulder CO 80303
nkardon@kardonlaw.com
(310) 902-7837

## CERTIFICATE OF SERVICE

      I hereby certify that on this 9th day of February, 2023, I electronically filed the foregoing **Sentencing Position** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

                                          /s/ *Nancy Kardon*
                                          NANCY KARDON